THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PERRY MARYBOY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO STRIKE EXPERT TESTIMONY**<br><br>Case No. 4:18-cr-00119-DN-DAO<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Daphne A. Oberg |

Defendant Perry Maryboy is charged with second-degree murder and use, carry, and discharge of a firearm in relation to a crime of violence.[1] Mr. Maryboy proposed to introduce expert testimony through Dr. John R. Black regarding the science of memory; human biological reactions to stressful or life-threatening situations; inconsistencies between a person's memory and physical evidence resulting from a law-enforcement investigation; and how a cognitive interview assists in obtaining a better understanding of the facts during a law-enforcement investigation.[2]

The government moved to strike Dr. Black's proposed testimony under Federal Rule of Evidence 702 ("Motion").[3] The government argues that Dr. Black is not qualified to testify as an expert in this case and that his proposed testimony is unhelpful, irrelevant, and prejudicial.[4] An

---

[1] Indictment, docket no. 17, filed Dec. 19, 2018.

[2] Defendant's Notice of Expert Testimony by Dr. John Black ("Notice of Expert"), docket no. 123, filed Apr. 28, 2022.

[3] United States' Motion to Strike Anticipated Testimony of Defense Expert John R. Black ("Motion"), docket no. 144, filed May 6, 2022.

[4] *Id.* at 3-17.

evidentiary hearing on the government's Motion was held on July 18 and 19, 2022 ("Daubert Hearing"), at which Dr. Black testified regarding his proposed trial testimony.[5] At the conclusion of the Daubert Hearing, findings of fact and conclusions of law were orally entered.[6] Consistent with those oral findings and conclusions, and for the reasons set forth below, the government's Motion[7] is GRANTED. Dr. Black is precluded from testifying as an expert witness at trial.

**Contents**

BACKGROUND ................................................................................................................. 2
    The government's anticipated facts at trial .................................................................. 3
    Dr. Black's anticipated expert testimony ..................................................................... 5
DISCUSSION ..................................................................................................................... 6
    Dr. Black is not qualified to testify as an expert in this case ....................................... 7
    Dr. Black's proposed expert testimony is unhelpful because it impermissibly bolsters and vouches for Mr. Maryboy's credibility ......................................................... 9
    Dr. Black's proposed testimony is unhelpful because it is within the jurors' common knowledge ................................................................................................................ 11
    Mr. Black's proposed testimony is unhelpful because it is speculative and does not fit the facts of the case ............................................................................................... 13
    Dr. Black's proposed testimony is unduly prejudicial under Federal Rule of Evidence 403 ... 16
ORDER ............................................................................................................................. 18

## BACKGROUND

This case is about a shooting that occurred on April 13, 2018.[8] The government alleges that Mr. Maryboy committed second-degree murder and use, carry, and discharge of a firearm in

---

[5] Minute Entry for Proceedings Held Before Judge David Nuffer, docket no. 179, filed July 19, 2022; Minute Entry for Proceedings Held Before Judge David Nuffer, docket no. 180, filed July 19, 2022; Daubert Hearing Transcript ("Hearing Tr."), docket no. 181, filed Aug. 11, 2022.

[6] Hearing Tr. at 191:21-199:4.

[7] Docket no. 144, filed May 6, 2022.

[8] Indictment.

relation to a crime of violence by shooting A.M. in the back of the head during a verbal argument.[9]

### The government's anticipated facts at trial[10]

On April 13, 2018, Mr. Maryboy was parked in his white truck on the side of the road. A.M. was driving by in his minivan with his spouse, Re.G., and Re.G.'s 7-year-old son, Ry.G. Re.G. requested A.M. to stop and tell the driver in the white truck to leave the area. Acting at Re.G.'s request, A.M. parked behind Mr. Maryboy's truck at an approximate 45-degree angle. A.M. got out of the van, approached the truck's front passenger window, and began speaking to the driver and only occupant of the truck (Mr. Maryboy). An argument ensued, the men exchanged F-words, and Mr. Maryboy asked A.M. what was in his hand. A.M. did not respond.

At that point, Mr. Maryboy got out of his truck, opened the back door, and got his revolver. Mr. Maryboy and A.M. were facing each other straight across the middle of the truck bed. Mr. Maryboy fired a first shot. The government anticipates that Re.G. will testify that around the time of the first shot, she slid over from the front passenger seat of the van, got out by the driver's door, and started screaming and swearing at Mr. Maryboy. According to Re.G., A.M. turned towards her, told her to calm down and get back in the van, and A.M. began walking back towards the van. Re.G. got back in the van and slid over to the front passenger seat. As A.M. was

---

[9] United States' Trial Brief at 2-26, docket no. 132, filed May 4, 2022.

[10] The government's anticipated facts at trial are the government's assertions of what it believes the evidence at trial will show. *Id*. Mr. Maryboy objects to the inclusion of these anticipated facts arguing that they are not supported by the evidence presented at the Daubert Hearing. Defendant's Edits to Government's [Proposed] Memorandum Decision and Order Granting Motion to Strike Expert Testimony ("Defendant's Edits") at 2, docket no. 185-1, filed Aug. 23, 2022. Mr. Maryboy's objection is overruled. These anticipated facts are not findings of fact. Rather, they are provided as background to give context to the issues raised in the government's Motion; Dr. Black's testimony at the Daubert Hearing and his proposed trial testimony; and the findings of fact and conclusions of law on the government's Motion.

at the van driver's door he stopped and as he turned back toward Mr. Maryboy, A.M. collapsed and fell to the ground.

Further investigation revealed that the A.M. was shot in the back of the head near where his minivan was parked. Law-enforcement agents discovered that the lethal bullet was fired from Mr. Maryboy's gun.

After a months' long investigation, law enforcement identified Mr. Maryboy as the suspected shooter. On December 12, 2018, two FBI agents interviewed Mr. Maryboy. Mr. Maryboy confirmed that he had an interaction with A.M. on the date in question. Mr. Maryboy stated that he and A.M. were arguing with each other as Mr. Maryboy sat in his truck. As the arguing continued, Mr. Maryboy got out of his truck and retrieved his gun. Mr. Maryboy stated that, as he was standing across from A.M., separated by the truck bed, Mr. Maryboy told A.M. to show his hands. According to Mr. Maryboy, A.M. stood without showing his hands. Mr. Maryboy stated that he cocked his revolver, raised it, and fired what he called a "warning shot" over A.M.'s head. Mr. Maryboy further stated that, following the first shot, Re.G. stayed in the van and did nothing until A.M. fell over. Instead, the arguing continued at the middle of the truck bed, Mr. Maryboy told A.M. repeatedly to show his hands, A.M. did not accede, and Mr. Maryboy thought A.M. had something with him. Mr. Maryboy then recocked his revolver and fired what he called a second "warning shot" far above A.M. Mr. Maryboy stated repeatedly that A.M. was facing him across the truck bed when Mr. Maryboy fired the second shot.

According to Mr. Maryboy, following his second "warning" shot, A.M. dropped to the ground, falling to his (A.M.'s) left. When the agents confronted Mr. Maryboy with the fact that A.M. was shot in the back of the head, Mr. Maryboy stated that he could not understand what happened because he was not aiming at A.M. Mr. Maryboy also explained that A.M. was only

"six, eight feet away" and "no matter how bad the barrel is," "at that distance it should be the point of aim" and "[i]t would've been right at my aim."

Mr. Maryboy's account is in sharp contrast with the government's anticipated facts. The government anticipates presenting evidence that Mr. Maryboy shot A.M. in the back of the head; Mr. Maryboy stated that he fired a second warning shot far above A.M.'s head while the two men were facing each other. The government anticipates presenting evidence that Mr. Maryboy shot A.M. while A.M. was close to his minivan; Mr. Maryboy stated that A.M. was standing across the truck bed when he fired the second shot.

### Dr. Black's anticipated expert testimony

Based on Mr. Maryboy's relevant filings[11] and Dr. Black's testimony at the July 18 and 19, 2022 Daubert Hearing,[12] Dr. Black is anticipated to testify at trial about four core areas:

1. Persons can experience cognitive and physiological effects when faced with a perceived real or immediate threat to their safety or life.

2. Persons in high stress situations may experience or be subject to involuntary responses, experience selective attention (tunnel vision), suffer audible exclusion, or have their perception, memory, and recall of an event affected.

3. An investigation of an event may naturally have inconsistencies between the actual event (objective and evidentiary based) and its recall by participants.

4. A proper and cognitive interview process in an investigation can assist with obtaining a better understanding of the facts.

Dr. Black's anticipated expert testimony largely focused on Mr. Maryboy's prior statements during Mr. Maryboy's interview with the FBI agents. Dr. Black proposed to testify

---

[11] Notice of Expert Testimony; Amended Defendant's Opposition to United States Motion in Limine to Strike Anticipated Testimony of Defense Expert John R. Black ("Response"), docket no. 166, filed May 13, 2022.

[12] Hearing Tr.

that individuals in high-stress, life-threatening situations can experience psychological and biological effects that cause them to inaccurately perceive or remember events.

## DISCUSSION

Federal Rule of Evidence 702 governs testimony by expert witnesses. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.[13]

"Under Rule 702, the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."[14] This is known as the court's "gatekeeper" role.[15] First, the district court must "determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[16] "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[17]

---

[13] FED. R. EVID. 702.

[14] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)).

[15] *Id*. at 1241 (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003)).

[16] *Id*.

[17] *Id.* (emphasis added) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Rodriguez-Felix*, 450 F.3d at 1123).

6

Even if expert testimony is reliable under the *Daubert* factors, "the court will still consider other non-exclusive factors to determine whether the testimony will assist the trier of fact: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility."[18]

Additionally, in evaluating proposed expert testimony, the district court must be mindful that the Federal Rules of Evidence generally favor the admissibility of expert testimony: "the rejection of expert testimony is the exception rather than the rule."[19] Often times the appropriate means of attacking shaky but admissible expert testimony is through "[v]igorous cross-examination [and the] presentation of contrary evidence."[20] Thus, the district "court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[21]

### Dr. Black is not qualified to testify as an expert in this case

An expert must be "qualified by knowledge, skill, experience, training, or education."[22] "An expert must have sufficient expertise in the subject about which he will testify."[23]

Dr. Black is not qualified to testify as an expert in this case. Dr. Black has an impressive background in law enforcement and the military.[24] He also has a master's degree in homeland

---

[18] *Rodriguez-Felix*, 450 F.3d at 1123.

[19] FED. R. EVID. 702 Advisory Committee Notes; *Heer v. Costco Wholesale Corp.*, 589 Fed. App'x 854, 861 (10th Cir. 2014).

[20] *Daubert*, 509 U.S. at 596.

[21] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty, State of Miss*, 80 F.3d 1074, 1078 (5th Cir. 1996).

[22] FED. R. EVID. 702.

[23] *Christison v. Biogen Idec Inc.*, No. 2:11-cv-01140-DN-DBP, 2016 WL 6902706, *2 (D. Utah Aug. 5, 2016).

[24] Dr. John R. Black (D.B.A.) Curriculum Vitae Updated December 2021, docket no. 123-1, filed Apr. 28, 2022.

defense and a Doctor of Business Administration focused on business intelligence.[25] However, his background does not qualify him to testify about the four core areas in this case.

Dr. Black's law-enforcement and military experience do not qualify him to testify about human biological and psychological reactions.[26] He is not a medical doctor.[27] He lacks clinical experience and medical training.[28] He has not obtained a degree or taken courses that would qualify him.[29] And he has not conducted studies or published peer-reviewed works in these areas.[30] Even if he has read studies on the four core areas, being "well read" on these topics is not enough to qualify him as an expert.[31] Additionally, he is unaware of any expert who has testified about the four core areas at trial.[32] And he has not testified as an expert about the four core areas, with the possible exception of the second core area (involuntary responses).[33]

Dr. Black's law-enforcement and military experience would form the primary basis for his opinions regarding the interaction between two civilians in this case.[34] His expert work

---

[25] *Id.*

[26] *C.f Davies v. City of Lakewood*, No. 14-cv-01285-RBJ, 2016 WL 614434, *10-11 (D. Colo. Feb. 16, 2016).

[27] Hearing Tr. at 79:6-10, 93:2-4, 93:17-21, 106:21-23, 113:16-21.

[28] *Id.*

[29] *Id.* at 21:22-22:19, 79:6-10, 93:2-4, 93:17-21, 106:21-23, 113:16-21.

[30] *Id.* at 78:17-79:5, 94:1-8.

[31] *Hernandez v. City of Albuquerque*, No. CIV 02-0333 JB/RHS, 2004 WL 5522847, *4 (D. N.M. Jan. 23, 2004) (proposed expert was unqualified to testify about "perceptual effects of stressful situations on police officers" because "[h]is knowledge of these perceptual effects is largely based on books and articles that he has read"); *Kruszka v. Novartis Pharma. Corp.*, 28 F. Supp. 3d. 920, 929 (D. Minn. 2014) ("The mere reading of others' articles on a treatment that is outside of his expertise, though it may loosely connect to this work, is not enough to qualify Dr. Bauer on these subjects."); *McElroy v. Arkansas Log Homes, Inc.*, No. 82-1642-C, 1989 WL 18755, *3 (D. Kan. Feb. 13, 1989) ("The mere fact that a chemist has read numerous articles regarding the symptoms of exposure to pentachlorophenol does not qualify him as an expert to opine that the cause of similar physical symptoms in a particular person in a particular environment was the result of that exposure and not the other possible medical causes.").

[32] Hearing Tr. at 190:19-191:5.

[33] *Id.* at 40:9-42:8.

[34] *Id.* at 29:10-20.

8

primarily relates to office use of force, military, and police experience, which does not bear directly on the subject matter of a civilian-against-civilian case.[35] There is a sharp distinction between law enforcement-civilian interactions and civilian-civilian interactions. Dr. Black conceded as much.[36] Law-enforcement officers have specialized training and experience that affect how they respond to violent or potentially violent situations. Average civilians do not. Law-enforcement officers have different responsibilities and authority than civilians. For example, average civilians understand that they have a duty to comply with a police officer's lawful command to "show me your hands." But average civilians would understand and react differently to the same command from another civilian.

Therefore, Dr. Black is not qualified to testify as an expert at trial in this case regarding the proposed four core areas. And he is precluded from testifying as an expert at trial.

### Dr. Black's proposed expert testimony is unhelpful because it impermissibly bolsters and vouches for Mr. Maryboy's credibility

"The credibility of witnesses is generally not an appropriate subject for expert testimony."[37] "Such testimony: (1) 'usurps a critical function of the jury'; (2) 'is not helpful to the jury, which can make its own determination of credibility'; and (3) when provided by 'impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury.'"[38] Credibility, memory, and perception are within the average juror's

---

[35] *Id.* at 197:9-11.

[36] *Id.* at 71:12-22.

[37] *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993) (citing *United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981)).

[38] *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (quoting *Toledo*, 985 F.2d at 1470).

common knowledge and experience.[39] A long line of Tenth Circuit authority prohibits experts from testifying about witness credibility.[40]

    Here, Dr. Black's proposed testimony impermissibly focuses on credibility—specifically, impermissible bolstering and voucher for Mr. Maryboy. The purpose of Dr. Black's proposed testimony is to suggest to the jury that Mr. Maryboy could have been honest in his FBI interview and may have perceived or remembered the events surrounding the shooting inaccurately due to psychological and biological reactions to the life-threatening situation.[41] Dr. Black would explain that it is common for witness statements to diverge from physical evidence discovered during a police investigation.[42] He would also discuss the FBI's interviewing technique and opine that a cognitive interview would have produced more information during Mr. Maryboy's interview.[43] His testimony at the Daubert Hearing make clear that his proposed trial testimony would focus on Mr. Maryboy's credibility.[44] Dr. Black went so far as to contend that the jury could not fully make a credibility determination without an expert's aid.[45]

    Ultimately, Dr. Black's proposed testimony in each of the four core areas would focus on Mr. Maryboy's subjective truthfulness during his interview with the FBI agents. His proposed

---

[39] *United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008) ("Testimony concerning credibility 'is often excluded because it usurps a critical function of the jury and because it is not helpful to the jury, which is capable of making its own determination regarding credibility.'") (quoting *United States v. Call*, 129 F.3d 1402, 1406 (10th Cir. 1997)); *United States v. Affleck*, 776 F.2d 1451, 1458 (10th Cir. 1985) ("Specialized testimony explaining memory, however, is improper. The average person is able to understand that people forget; thus, a faulty memory is a matter for cross-examination.").

[40] *See, e.g.*, *Hill*, 749 F.3d at 1258 (10th Cir. 2014); *Benally*, 541 F.3d at 995; *United States v. Adams*, 271 F.3d 1236, 1246 (10th Cir. 2001); *United States v. Velarde*, 214 F.3d 1204 (10th Cir. 2000); *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999); *Samara*, 643 F.2d at 705.

[41] *E.g.*, Response at 2-4.

[42] *Id.*

[43] *Id.*

[44] *E.g.*, Hearing Tr. at 116:5-117:5, 122:10-17, 123:25-124:11, 126:4-20, 130:14-24.

[45] *Id.* at 116:5-117:5.

testimony is aimed to persuade the jury to take a more favorable view when assessing Mr. Maryboy's credibility during the FBI interview and during his potential trial testimony. The proposed testimony is akin to argument which is for counsel to make to the jury. Such testimony, backed by the influence of an expert witness, impermissibly bolsters and vouches for Mr. Maryboy's credibility. The proposed testimony is unhelpful and would usurp the jury's critical function of determining credibility, a determination which the jury is capable of making on its own based the witness testimony and physical evidence that will be presented at trial. "Only evidence can establish proof, only the jury can find facts and decide issues . . . and only the attorneys in the case can argue about the meaning of the evidence."[46]

Therefore, Dr. Black is precluded from testifying as an expert at trial in this case regarding the proposed four core areas.

## Dr. Black's proposed testimony is unhelpful because it is within the jurors' common knowledge

Rule 702(a) requires expert testimony to "help the trier of fact to understand the evidence or to determine a fact in issue." To determine whether expert testimony will be helpful, courts must assess whether the proposed testimony "is within the juror's common knowledge and experience."[47] Expert testimony is not helpful when it simply states a proposition that is "obvious."[48] The Tenth Circuit has stated that, "as to the court's relevancy and helpfulness conclusion, we note that 'where expert testimony is offered on an issue that a jury is capable of

---

[46] *Rowe v. DPI Specialty Foods, Inc.*, No. 2:13-cv-00708-DN-EJF, 2015 WL 4949097, *5 (D. Utah Aug. 19, 2015).

[47] *Rodriguez-Felix*, 450 F.3d at 1123.

[48] *Lippincott v. State Indus.*, 145 F.3d 1346, *2 (10th Cir. 1998) (unpublished) ("The jury did not need expert testimony to help them determine that hot water was dangerous; the risk to an unattended child was open and obvious to the ordinary user.").

assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact.'"[49]

Here, Dr. Black proposes to testify that an individual in a high-stress event could experience physiological and psychological effects.[50] This proposed testimony is within the jurors' common knowledge. An average juror understands that memory, perception, and recall can be affected by high-stress circumstances and can change overtime. Jurors are "able to understand that people forget."[51] Likewise, an average juror understands that high-stress situations can affect memory, perception, and recall.

Dr. Black conceded that the average person is exposed to high-stress situations in their respective life experiences.[52] He conceded that jurors are familiar with involuntary responses to high-stress situations.[53] He conceded that "people get involved in high-stress situations every day."[54] And he conceded that jurors, based on their life experiences, are aware that different people can perceive or recall the same event differently.[55] Indeed, Dr. Black used common occurrences—a car accident, driving in snowy conditions, nearly colliding with a deer while driving—as examples of high-stress situations.[56] These are questions for the jury to assess based on their commonsense, experience, and logic. Expert testimony is unnecessary and would not be helpful.

---

[49] *Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020) (quoting *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (internal punctuation omitted).

[50] Notice of Expert Testimony at 1-2; Response at 1-5.

[51] *Affleck*, 776 F.2d at 1458.

[52] Hearing Tr. at 91:4-13.

[53] *Id*. at 91:18-21.

[54] *Id*. at 161:22-23.

[55] *Id*. at 120:7-14.

[56] *Id*. at 94:9-95:19; Tr. 161:19-162:14.

Additionally, Dr. Black testified that his testimony was needed to provide the "knowledge base" or "framework" for the jury to assess memory, perception, and recall in this case involving a shooting.[57] But this demonstrates that his proposed trial testimony is an attempt by an expert to emphasize certain evidence or testimony. Again, it is the role of counsel during closing argument to emphasize evidence and testimony.[58]

Therefore, Dr. Black is precluded from testifying as an expert at trial in this case regarding the proposed four core areas.

### Mr. Black's proposed testimony is unhelpful because it is speculative and does not fit the facts of the case

"Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."[59] There must be a connection—a "link"—between the offered expert testimony and the facts of the case.[60] "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."[61]

Here, Mr. Black's proposed testimony is speculative and lacks fit. At the Daubert Hearing, Dr. Black could not explain how his expert theories specifically applied to the facts of this case. Rather, he speculated that his theories might apply.

Regarding the first core area (cognitive and physiological effects of life-threatening situations), the government asked Dr. Black at the Daubert Hearing whether and how the

---

[57] *Id*. R 115-11-14; 139:5-22.

[58] *Rowe*, 2015 WL 4949097, *5.

[59] *Daubert*, 509 U.S. at 591-92.

[60] *Id.* at 591.

[61] *Id.* (internal quotations omitted).

interaction with A.M. affected Mr. Maryboy's perceptions and memory.[62] Dr. Black replied that the interaction "could have" affected Mr. Maryboy's perception and memory and that "it would not surprise me that they would affect him."[63] Dr. Black admitted that "[t]here is no quantitative test nor qualitative test for consciousness that can prove that"[64] and that "[n]o one knows [Mr. Maryboy's] own mind at that point, and so I'm not going to speak for his mind."[65] Dr. Black simply explained that Mr. Maryboy's attention could have been focused on something other than the back of A.M.'s head when he pulled the gun's trigger.[66] Such generalized and vague expert testimony is speculative and is insufficient to create a link or fit to the facts case for the first core area (cognitive and physiological effects of life-threatening situations).

Regarding the second core area (involuntary responses to high-stress situations), Dr. Black's proposed testimony would include discussion that high-stress situations can cause involuntary responses like tunnel vision and can affect perception, memory, and recall.[67] When asked about selective attention at the Daubert Hearing, Dr. Black stated that "there's indication that it might be there."[68] When asked about audible exclusion, Dr. Black stated that there's no indication it affected Mr. Maryboy's perception of the facts that he described in the FBI interview.[69] Dr. Black essentially conceded that audible exclusion has no application in this case, despite the topic being included in his Notice of Expert Testimony.[70] When asked whether the

---

[62] Hearing Tr. at 82:13-83:3.

[63] *Id.*

[64] *Id.*

[65] *Id*. at 80:21-81:9.

[66] *Id*. at 105:2-106:4.

[67] Notice of Expert Testimony at 1-2; Response at 1-3.

[68] Hearing Tr. at 80:2-6.

[69] *Id*. at 108:25-109:25.

[70] *Id*. At 108:7-109:25; Notice of Expert Testimony at 1; Response at 3.

interaction with the A.M. affected Mr. Maryboy's decision making, Dr. Black stated it "could have" and that "I'm not going to tell you that they absolutely did."[71] Dr. Black could not determine with any reasonable certainty whether Mr. Maryboy experienced involuntary responses and failed to specify an action or statement of Mr. Maryboy likely caused by an involuntary response. Dr. Black's proposed testimony regarding the second core area (involuntary responses to high-stress situations) is speculative and lacks a link or fit to the facts case.

Regarding the third core area (inconsistencies between objective evidence and witness statements), Dr. Black explained that a witness can be "honest but inaccurate" in recalling facts.[72] He stated that it is not uncommon for inconsistencies to exist between witness recall and physical evidence.[73] When asked whether the theory that inconsistencies in other investigations make Mr. Maryboy more or less credible, Dr. Black replied with two levels of speculation. He first stated that, "I think it might.".[74] And then continued stating that "if the jury were to believe that the only option for [an] inconsistency is deception or something similar, then [inconsistencies in other investigations] bear on this case."[75] Dr. Black offered no application of scientific or specialized knowledge for his opinions—only that inconsistencies were present in other investigations and in this investigation. And Dr. Black offered no explanation for why a jury would believe the only option for an inconsistency is deception. Such speculation regarding

---

[71] Hearing Tr. at 82:8-19.

[72] *Id*. at 120:24-121:21.

[73] *Id*.

[74] *Id*. at 122:10-17.

[75] *Id*. at 124:9-11.

15

the third core area (inconsistencies between objective evidence and witness statements) is not the proper realm for expert testimony and is not helpful to the jury.

Regarding the fourth court area (the cognitive interview process), Dr. Black did not perform a cognitive interview of Mr. Maryboy in this case.[76] He stated, "I'm not going to say that a cognitive interview is going to discount any of the statements already made."[77] His proposed testimony is that a cognitive interview is designed to elicit more information than a standard law enforcement interview.[78] He did not offer to apply the theory to the facts of this case. And he agreed that it would be speculating to say that a cognitive interview would have affected Mr. Maryboy's statements to the FBI.[79] Dr. Black's opinion that a cognitive interview could have helped facilitate Mr. Maryboy's memory recall and memory consolidation is speculative. Such speculative testimony regarding the fourth core area (the cognitive interview process) is not the proper realm for expert testimony and is not helpful to the jury.

Dr. Black's proposed testimony 's proposed testimony regarding the four core areas is speculative, does not fit the facts of the case, and is not helpful to the jury. Therefore, Dr. Black is precluded from testifying at trial as an expert regarding the four core areas.

### Dr. Black's proposed testimony is unduly prejudicial under Federal Rule of Evidence 403

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

---

[76] *Id*. at 47:12-15.

[77] *Id*. at 180:19-23.

[78] *Id.*

[79] *Id*. at 181:6-13.

cumulative evidence."[80] "[T]estimony of impressively qualified experts on the credibility of other witnesses is prejudicial, unduly influences the jury, and should be excluded under Rule 403."[81]

Here, it would be unfairly prejudicial, confusing, and a waste of time to permit Dr. Black to testify about areas touching on credibility and areas that are within the jurors' common knowledge and experience.[82] The expert testimony is also speculative and would be in a novel area without comparable work done in other cases by Dr. Black or others. Mr. Maryboy's counsel will have the opportunity to argue the evidence. It is not the expert's role to do so.

Additionally, Dr. Black's testimony would be unduly prejudicial because it impedes the jury's function to determine whether Mr. Maryboy is credible and whether he acted reasonably under the circumstances. At one point, Dr. Black provided an explanation regarding the different factors that may have affected Mr. Maryboy's decision making.[83] The government then asked, "Aren't all of those considerations you've just walked me through considerations that should be and will be undertaken by the jury to assess whether Mr. Maryboy was acting reasonably, taking into account all of the circumstances that you've just identified?"[84] Dr. Black replied, "Oh, I would hope so, yeah."[85] This exchange demonstrates that Mr. Black's proposed testimony

---

[80] Fed. R. Ev. 403.

[81] *Benally*, 541 F.3d at 995 (quoting *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001)).

[82] *Id.*; *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) ("Where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous.") (quoting *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984)).

[83] Hearing Tr. at 83:13-86:6.

[84] *Id.* at 86:7-11.

[85] *Id.* at 86:12.

crosses the line from expert opinion to a "super-juror," "aided by the gloss of expert credentials," attempting to dictate a result to the jury.[86]

Therefore, Dr. Black is precluded from testifying as an expert at trial regarding the four core areas under Rule 403.

## ORDER

IT IS HEREBY ORDERED that the government's Motion[87] is GRANTED. Defense Expert Dr. John R. Black is precluded from testifying at trial.

Signed this 14th day of September, 2022.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[86] *Carroll v. United States*, No. CIV-15-674-D, 2016 WL 10567693, *2 (W.D. Okla. Dec. 16, 2016).

[87] Docket no. 144, filed May 6, 2022.

18