THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PERRY MARYBOY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER TO DETAIN PERRY MARYBOY PENDING SENTENCING**<br><br>Case No. 4:18-CR-00119<br><br>District Judge David Nuffer<br><br>Magistrate Judge Daphne A. Oberg |

On May 18, 2023, a jury returned a verdict, finding Defendant Perry Maryboy guilty of two offenses: Murder in the Second Degree and Use, Carry, and Discharge of a Firearm During and In Relation to a Crime of Violence.[1]  After the jury announced its verdict, the government argued that the nature of Mr. Maryboy's convictions required mandatory detention.  The court set a status conference for June 15, 2023, to address this issue, and directed defense counsel to provide Mr. Maryboy's medical records beforehand, to enable a careful evaluation of Mr. Maryboy's release status pending sentencing.[2]

A day later, the court issued an order directing defense counsel to file Mr. Maryboy's medical records along with a report from a physician describing Mr. Maryboy's medical conditions (including his heart condition) and future treatment needs by June 8, 2023—in preparation for the June 15 hearing.[3]  Both parties were told they could "file other papers which

---

[1] (*See* Verdict, Doc. No. 232.)

[2] (*See* Minute Entry, Doc. No. 229.)

[3] (Order Re: Status Conference on Detention, Doc. No. 236.)

[would] be helpful in determining the issues at the status conference."[4]  The parties were given until June 13, 2023, to file responsive papers.[5]  One of Mr. Maryboy's attorneys filed 101 pages of medical documents on June 9, 2023.[6]  Aside from these medical records, defense counsel filed no additional documents or supportive memoranda.  The government filed a memorandum responsive to the medical records on June 13, 2023.[7]

Each of these submissions have been reviewed by the undersigned magistrate judge, along with various docket entries, filings, and transcripts available on the docket.[8]  Based on this review, the discussion at the hearing held on June 15, 2023, and the governing legal standards, Mr. Maryboy is ordered to be DETAINED pending sentencing.

**DISCUSSION**

1.  Under 18 U.S.C. § 3143(a)(2), Mr. Maryboy must be detained.

The statute governing post-conviction detention determinations is 18 U.S.C. § 3143.  By its own terms, the mandatory detention provision of subsection (a)(2) of this statute applies when a defendant has been found guilty of an offense listed in 18 U.S.C. § 3142(f)(1)(A), (B), or (C).  Section 3142(f)(1)(A) applies to crimes of violence, as defined in 18 U.S.C. § 3156(a)(4).[9]

---

[4] (*Id.* at 2.)

[5] (*Id.*)

[6] (*See* Medical Records for Perry Maryboy, Doc. No. 247 (filed under seal).)  Another attorney for Mr. Maryboy sent additional medical documents via email to the district judge's chambers' mailbox on June 8, 2023.  These documents were never filed with the court.

[7] (*See* United States' Mem. Regarding Detention ("U.S. Mem.") (filed under seal), Doc. No. 251.)

[8] The district judge referred this hearing and determination to the undersigned magistrate judge on June 12, 2023.  (*See* Doc. No. 249.)

[9] *See* 18 U.S.C. §§ 3142(f)(1)(A), 3156(a)(4).

Under § 3156(a)(4), a crime of violence includes "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another."[10]  The jury convicted Mr. Maryboy of second-degree murder—"the unlawful killing of a human being with malice aforethought."[11]  It is a crime of violence.[12]

Where one of Mr. Maryboy's crimes of conviction constitutes a crime of violence, § 3143(a)(2) requires that he be detained while "awaiting disposition or execution of sentence" unless two conditions are met:

> • First, either the judicial officer must find "there is a substantial likelihood that a motion for acquittal or new trial will be granted" or the government must recommend "no sentence of imprisonment be imposed on the person."[13]

> • Second, the judicial officer must "find[] by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community."[14]

Unless both conditions are met, detention is mandatory.

In this case, none of the conditions of § 3143(a)(2) are met.  Indeed, at the hearing, Mr. Maryboy indicated he was not attempting to meet these conditions—nor does it appear he could do so.  First, there is no showing that the verdict will likely be overturned.  And rather than

---

[10] 18 U.S.C. § 3156(a)(4)(A).

[11] 18 U.S.C. § 1111(a); (*see also* Indictment, Doc. No. 17; Verdict, Doc. No. 232-1).

[12] *See United States v. Begay*, 33 F.4th 1081, 1093 (9th Cir. 2022) (en banc) (finding a conviction for second-degree murder under § 1111(a) constitutes a crime of violence under 18 U.S.C. § 924(c)(3)(A) "because murder is the unlawful killing of a human being with malice aforethought" which means "to kill either deliberately or recklessly with extreme disregard for human life" (emphasis omitted)).

[13] 18 U.S.C. § 3143(a)(2)(A)(i)–(ii).

[14] 18 U.S.C. § 3143(a)(2)(B).

recommending no sentence of imprisonment, the attorneys for the government have alluded that they will ask for a lengthy sentence of imprisonment.[15]  Further, Mr. Maryboy's conviction under 18 U.S.C. § 924(c) requires the imposition of a minimum mandatory sentence of ten years.[16]  For these reasons, the exception to detention under § 3143(a)(2) does not apply.

At the June 15 hearing, Mr. Maryboy relied on the exception to mandatory detention under 18 U.S.C. § 3145(c) rather than § 3143(a)(2).  However, as discussed below, Mr. Maryboy has failed to meet the standards under this statute also.

2. <u>No exceptional reasons exist under 18 U.S.C. § 3145 which would make Mr. Maryboy's detention inappropriate.</u>

Under 18 U.S.C. § 3145(c), a person subject to detention under § 3143(a)(2) may still be released—but Mr. Maryboy has not established the provisions permitting release under this section apply in his case.  First, release can only be ordered under this section if the conditions of release in § 3143(a)(1) are met.[17]  Under this provision, Mr. Maryboy would need to show, by clear and convincing evidence, that he is neither a flight risk nor a danger to the community.[18]  Any request for release under § 3145(c) fails because Mr. Maryboy failed to satisfy this burden with regard to his risk of danger.

Mr. Maryboy is an adjudicated danger to the community.  A jury found Mr. Maryboy guilty of both second-degree murder and discharging a firearm during a crime of violence.  As the trial evidence revealed, Mr. Maryboy never saw the victim with a gun and the victim never

---

[15] (*See* U.S. Mem. 5, Doc. No. 251.)

[16] *See* 18 U.S.C. § 924(c)(1)(A)(iii).

[17] *See* 18 U.S.C. § 3145(c).

[18] *See United State v. Velarde*, 555 F. App'x 840, 840 (10th Cir. 2014) (unpublished).

directly threatened violence to Mr. Maryboy.  Despite this, Mr. Maryboy fired a warning shot.
He then shot the victim in the back of the head, drove away, and hid the murder weapon.  This
was not an act of self-defense.  Mr. Maryboy's murder of A.M. was an extremely dangerous and
violent act.  Moreover, there are allegations that Mr. Maryboy engaged in remarkably similar
conduct four years earlier.  Mr. Maryboy is alleged to have pointed a firearm at his uncle, fired
shots in the air, then fired a shot at the ground.[19]  These events demonstrate Mr. Maryboy's
continued risk of extremely dangerous behavior.  Although Mr. Maryboy met his burden to show
his risk of flight can be managed—based on his compliance with his release conditions and his
appearances in court—this is insufficient, where he did not meet his burden with regard to his
risk of danger.

Even if Mr. Maryboy had succeeded in making the necessary showing regarding his risk
of danger, he would also need to show exceptional reasons exist which would make his detention
inappropriate.[20]  Mr. Maryboy has not met this burden.  He has not shown clearly that
exceptional reasons warrant his release.

In *United States v. Wages*,[21] the Tenth Circuit defined and clarified the nature of this
"exceptional reasons" requirement.  The court defined "exceptional" as "out of the ordinary:

---

[19] (United States' Notice of Intent to Offer Evidence Under Rule 404(b)4, Doc. No. 109.)  At the
June 15 hearing, Mr. Maryboy argued this information was never admitted into evidence at trial.
While this is true, the allegations are still relevant to the risks Mr. Maryboy poses.

[20] *See* 18 U.S.C. § 3145(c).

[21] 271 F. App'x 726 (10th Cir. 2008) (unpublished).

uncommon, rare,"[22] and noted that "a case by case evaluation is essential."[23]  Applying this standard, the *Wages* court concluded the district court did not err in finding the defendant failed to meet his burden.[24]  Specifically, the court concluded the defendant's age, lack of criminal record, use of a wheelchair and special mattress to avoid pain, limited ability to hear—and need to care for his elderly mother who was deaf and had limited eyesight—was insufficient to meet this "exceptional reasons" standard.[25]  In doing so, the court observed "it is a rare case in which health conditions present an 'exceptional reason.'"[26]

In *United States v. Hosier*,[27] the Tenth Circuit further refined the issue for courts to consider: "the question is whether, due to any truly unusual factors or combination of factors (bearing in mind the congressional policy that offenders who have committed crimes of violence should not, except in exceptional circumstances, be released . . . ) it would be *unreasonable* to incarcerate the defendant pending sentencing."[28]  In *Hosier*, the Tenth Circuit reversed the district court's release decision and remanded the case, after finding the defendant's compliance

---

[22] *Id.* at 727 (quoting *Webster's Third New Int'l Dictionary* (*Unabridged*) 791 (G.& C. Merriam Co. 1976)).

[23] *Id.* (internal quotation marks omitted).

[24] *See id.* at 727–28.

[25] *See id.*

[26] *Id.* at 728.

[27] 617 F. App'x 910 (10th Cir. 2015) (unpublished).

[28] *Id.* at 913 (internal quotation marks omitted) (emphasis added).

with his terms of release did not qualify as an exceptional reason why detention would be inappropriate.[29]

Mr. Maryboy has established he has serious, chronic health issues, including significantly impaired heart function.  And Mr. Maryboy has fully complied with his release terms.  But Mr. Maryboy has not shown these factors make his detention pending sentencing inappropriate.  Mr. Maryboy's medical problems are longstanding, yet he was originally ordered to be detained in this case on December 20, 2018.[30]  After he spent more than eighteen months in custody, the court granted Mr. Maryboy's motion to reopen the detention determination, and ordered his release—based on his health status coupled with the emerging threat of COVID-19.[31]  But COVID-19 no longer poses the threat it once did before vaccines were widely available.[32]  In other words, the primary justification for Mr. Maryboy's release carries far less force— especially where Mr. Maryboy's medical records show he has been vaccinated.  Accordingly, Mr. Maryboy has not shown his medical needs, absent COVID-19 concerns, are such that detention would be unreasonable.  For instance, he has not shown his health will be further damaged or threatened if he is incarcerated pending sentencing—or that his medical needs cannot be met while incarcerated.  In fact, there is an indication that Mr. Maryboy's medical

---

[29] *See id.* at 914.

[30] (*See* Minute Entry, Doc. No. 20.)

[31] (*See* Minute Entry, Doc. No. 69.)  As Mr. Maryboy pointed out at the June 15 hearing, the court also concluded his risks of nonappearance and danger could be managed, but it made clear that the primary consideration was the risk of COVID-19 in the correctional setting.

[32] *See, e.g.*, Mark W. Tenforde et al., *Sustained Effectiveness of Pfizer-BioNTech and Moderna Vaccines Against COVID-19 Associated Hospitalizations Among Adults—United States, March-July 2021*, Morbidity and Mortality, Weekly Report, Aug. 27, 2021, https://www.cdc.gov/mmwr/volumes/70/wr/mm7034e2.htm?s_cid=mm7034e2_w.

needs *can* be adequately met while incarcerated, in that his medical condition did not deteriorate during his previous, lengthy term of pretrial incarceration.

Further, Mr. Maryboy has not shown his health conditions have worsened in any emergent, critical way.  He has not been hospitalized pending trial.  He has not shown any need for immediate intensive care.  And he is not on a heart transplant list.[33]  Indeed, Mr. Maryboy's medical records show that while his heart condition has varied somewhat, it has not varied dramatically since 2015.[34]  His health status appears poor, but stable.  On this record, Mr. Maryboy has not established his medical issues—although chronic and serious—make detention inappropriate, nor has he shown his risk of danger to the community can be reasonably managed.

Where Mr. Maryboy has not established exceptional reasons exist meriting an exception to the mandatory detention requirement in 18 U.S.C. § 3143(a)(2), he must be detained.

## CONCLUSION

Under the legal standards now applicable to his custodial status, Mr. Maryboy must be detained pending sentencing.  Accordingly, Mr. Maryboy is ordered detained.

DATED this 15th day of June, 2023.

BY THE COURT

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[33] (*See* Ex. 1 to U.S. Mem., Tr. of Status Conference (May 2, 2023) at 14:9–18, Doc. No. 251-1 (filed under seal).)

[34] (*See, e.g.*, U.S. Mem. 6 n.11 & 7 n.12, Doc. No. 251 (summarizing medical evidence).)